**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION (COLUMBUS)**

| | | |
|---|---|---|
| SONNIE W.,[1] | : | Case No. 2:22-cv-04172 |
| Plaintiff, | : | |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

**DECISION AND ORDER**

---

Plaintiff filed an application for Disability Insurance Benefits in August 2017.

Plaintiff's claim was denied initially and upon reconsideration. An Administrative Law

Judge (ALJ) initially held a hearing at Plaintiff's request in September 2019. Another

ALJ held a second hearing in November 2021 and concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. For the reasons set forth below, this Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

## I.      BACKGROUND

Plaintiff asserts that she has been under a disability since July 25, 2017. At that time, she was forty-seven years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. 20 C.F.R. § 404.1563(c). She turned fifty years old prior to the issuance of the ALJ's decision and changed age category to "closely approaching advanced age." 20 C.F.R. § 404.1563(d). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 8) is summarized in the ALJ's decision ("Decision," Doc. No. 8-2 at PageID 116-43), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 13), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 14). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.     STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

§ 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "[W]hether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

3

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.   FACTS

### A.   The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

Step 1:     Plaintiff has not engaged in substantial gainful activity since July 25, 2017, the alleged onset date.

Step 2:     She has the severe impairments of attention deficit hyperactivity disorder (ADHD), post-traumatic stress disorder (PTSD), psoriatic arthritis, fibromyalgia, thoracic spine degenerative disc disease, and anemia.

Step 3:          She does not have an impairment or combination of impairments
                 that meets or equals the severity of one in the Commissioner's
                 Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:          Her residual functional capacity (RFC), or the most she can do
                 despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
                 F.3d 235, 239 (6th Cir. 2002), consists of light work as defined in 20
                 C.F.R. § 404.1567(b), subject to the following limitations: [S]he can
                 never climb ladders, ropes, or scaffolds, occasionally stoop, and
                 frequently perform other postural movements. Additionally, she is
                 limited to only occasionally pushing and pulling with her bilateral
                 upper and lower extremities. [Plaintiff] can frequently handle, finger,
                 feel, and reach bilaterally. She can occasionally operate foot pedals
                 bilaterally. She cannot work in extreme temperatures or humidity.
                 [Plaintiff] is also limited to performing simple tasks in a routine
                 work environment. She can occasionally work with the public in a
                 customer service capacity and occasionally tolerate tandem or close
                 team tasks."

                 She is unable to perform any of her past relevant work.

Step 5:          Considering Plaintiff's age, education, work experience, and RFC,
                 there are jobs that exist in significant numbers in the national
                 economy that she can perform.

(Decision, Doc. No. 8-2 at PageID 122-32.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 132-33.)

**B.      The ALJ's Symptom Severity Analysis**

After describing the applicable legal standard, the ALJ summarized Plaintiff's

symptoms, subjective complaints, and reports of difficulty with daily activities that she

provided in the disability reports, her panic attack logs, and her testimony at the

November 2021 hearing. (Decision, Doc. No. 8-2 at PageID 126-27.) The ALJ also

summarized the medical records and acknowledged the subjective complaints and daily

5

activities that Plaintiff reported to her medical providers. (*Id.* at PageID 127-28.) Additionally, the ALJ described medical opinions and prior administrative findings. (*Id.* at PageID 128-30.)

The ALJ concluded that although Plaintiff's impairments could reasonably be expected to cause some of her symptoms, the "intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id*. at PageID 127.) The ALJ explained: "Generally, her medical treatment has been conservative, consisting mostly of medication management. Other than diffuse tenderness, physical examination findings have been generally unremarkable. Additionally, [Plaintiff] was looking for a job in early 2019, suggesting her symptoms were not as severe as alleged (Exhibit 27F)." (*Id.*)

### C.    Consultative Psychologist Natalie Meyer, Psy.D.

Dr. Meyer performed a consultative psychological evaluation in November 2017. (AR, Doc. No. 8-7 at PageID 828-33.) Dr. Meyer observed that Plaintiff presented with adequate grooming and hygiene, and was cooperative and polite. (*Id.* at PageID 830.) Plaintiff exhibited normal speech, clear and logical thought processes, and adequate receptive language skills, although her responses were "limited by low energy at times." (*Id.* at PageID 831.) Plaintiff was cooperative and polite and exhibited appropriate eye contact throughout the interview. However, Dr. Meyer reported that Plaintiff exhibited a restricted range of affect and a depressed and withdrawn mood. (*Id.*)

With respect to cognitive functioning, Dr. Meyer reported that Plaintiff showed no difficulties with following the conversation or responding to direct questions. (AR, Doc.

6

No. 8-7 at PageID 831-32.) Plaintiff was able to complete some verbal reasoning and math calculation tasks, and Dr. Meyer estimated that Plaintiff functioned in the average range of intelligence. (*Id.*) Dr. Meyer noted, however, that Plaintiff said that she completed tasks slowly and needed to take breaks. (*Id.*) Dr. Meyer further reported that Plaintiff exhibited sufficient judgment and adequate insight into her difficulties. (*Id.*)

When asked to describe Plaintiff's abilities and limitations in understanding, remembering, and carrying out instructions, Dr. Meyer cited Plaintiff's report that she had no past difficulties with understanding directions at work. (AR, Doc. No. 8-7 at PageID 832.) Dr. Meyer also noted that Plaintiff had no difficulty following conversation and responding to direct questions during the interview, and that she was able to complete verbal reasoning and math calculation tasks. (*Id.*) Dr. Meyer noted that Plaintiff reported being able to care for herself and her home, although she reported "low motivation to complete tasks." (*Id.*) Dr. Meyer further noted: "Chronic pain also interferes with her ability to carry out instructions." (*Id.*)

With respect to maintaining attention, concentration, persistence, and pace to perform simple and multi-step tasks, Dr. Meyer noted that Plaintiff reported a history of receiving medication for ADHD. (AR, Doc. No. 8-7 at PageID 833.) Dr. Meyer cited Plaintiff's statement that she was "slow to complete tasks and must take breaks." (*Id.*) According to Dr. Meyer, Plaintiff exhibited no difficulties with following the conversation or with word retrieval during the evaluation, and her attention and concentration skills were "at least marginally adequate." (*Id.*) Dr. Meyer opined that

7

"[s]ymptoms of depression may also lead to decreased attention and concentration skills."
(*Id.*)

Regarding the ability to respond appropriately to others, Dr. Meyer noted
Plaintiff's subjective reports that she generally got along well with others in the past, but
that she was currently "withdrawn and anxious about leaving her home." (*Id.*) Dr. Meyer
reported that Plaintiff was cooperative and interacted appropriately during the evaluation,
and exhibited "no indication of significant anger control difficulty." (*Id.*)

In the final area of responding appropriately to work pressures, Dr. Meyer reported
that Plaintiff generally responded appropriately and put forth good effort during the
evaluation, although she "appear[ed] to have low energy which limited her responses at
times." (AR, Doc. No. 8-7 at PageID 833.) According to Dr. Meyer, Plaintiff said that she
had some limited strategies for managing work stress in the past, but that her current pain
levels prevented her from utilizing those strategies. (*Id.*) Dr. Meyer noted that Plaintiff
had a history of participating in outpatient services for depression and anxiety, and that
Plaintiff had recently restarted those services. (*Id.*) Dr. Meyer opined: "Work pressure
may increase depressive symptomatology including tearfulness, withdrawal from others,
slowed work performance, and poor frustration tolerance." (*Id.*)

The ALJ summarized the subjective complaints that Plaintiff reported to Dr.
Meyer and the mental status findings that Dr. Meyer reported:

> [Plaintiff] underwent a psychological evaluation with Natalie Meyer,
> Psy.D. in November 2017, during which she reported a history of ADHD,
> depression, and anxiety (Exhibit 7F). She was anxious about leaving the
> house and rarely did so unless it was absolutely necessary. Her daily
> activities consisted of driving but not grocery shopping. On mental status

8

> examination, she was cooperative and polite, appeared tired and had low energy while answering questions, thought processes were clear and logical, mood depressed and withdrawn, affect restricted, eye contact appropriate, there was no indications of anxiety, she was alert, judgment was sufficient, and insight adequate. [sic] Major depressive disorder with anxious distress and ADHD were diagnosed.

(Decision, Doc. No. 8-2 at PageID 127.)

However, the ALJ did not summarize or discuss the comments and opinions that Dr. Meyer included in the "Functional Assessment" section of her report. (*See* Decision, Doc. No. 8-2 at PageID 127-31.) Nor did the ALJ consider the persuasiveness, supportability, or consistency of Dr. Meyer's opinions. (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff asserts the ALJ erred because she "failed to account for the total limiting effects of Plaintiff's impairments." (SE, Doc. No. 10 at PageID 1483.) Plaintiff contends that the ALJ did not properly evaluate her subjective symptoms or the opinion evidence, and that the ALJ's RFC is not supported by substantial evidence. (*Id.* at PageID 1486-1501.) Finding error in the ALJ's evaluation of Plaintiff's subjective complaints and the opinion of consultative psychologist Dr. Meyer, the Court does not address Plaintiff's other assigned errors and instead instructs the ALJ to address all of them on remand.

### A.    The ALJ Reversibly Erred When Evaluating Plaintiff's Symptom Severity.

#### 1.    The ALJ must use the process for evaluating symptom severity outlined in Social Security Rule 16-3p.

The ALJ was required to comply with the applicable Social Security regulation when evaluating Plaintiff's symptoms. 20 C.F.R. § 404.1529. In addition, because

Plaintiff alleged symptoms of disabling severity, the ALJ was required to use a two-step process for evaluating those symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).[2]

At the first step, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

At the second step, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other

---

[2] Although SSRs do not have the same force and effect as statutes or regulations, they are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1).

information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf*. 20 C.F.R. § 404.1529(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

As part of this analysis, the ALJ is required to determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider whether an individual's statements

are consistent with her symptoms, keeping in mind that the statements may themselves be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at \*8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at \*9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent . . . on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 (6th Cir. 2016).

Further, "if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id*. at \*9. However, an ALJ "will not find an individual's symptoms inconsistent [] on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* The SSR explains, for example, that individuals may not seek or follow treatment due to side effects from medications, an inability to afford treatment, or an inability to understand the need for treatment due to a mental impairment. *Id*. at \*9-10. The ALJ may need to contact the claimant—or to question the claimant at the administrative hearing—to ascertain the reason(s) for the lack

of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

        **2.**      **The ALJ erred in her evaluation of Plaintiff's treatment history.**

The ALJ's analysis of Plaintiff's symptom severity does not comply with the applicable rules and regulations. Specifically, the ALJ erred when analyzing Plaintiff's treatment history. For this reason, the Court reverses and remands the ALJ's decision.

The ALJ repeatedly relied on Plaintiff's limited treatment history to conclude that her symptoms were not severe. In the Step 2 analysis, the ALJ concluded that Plaintiff's gastrointestinal impairments were nonsevere because she only "received sporadic and conservative gastrointestinal treatment since the alleged onset date." (Decision, Doc. No. 8-2 at PageID 121-22.) In the RFC assessment, the ALJ discounted the opinion of consultative physician Dr. Krupadev because "[Plaintiff's] records in 2020 and 2021 document sporadic and conservative treatment." (*Id.* at PageID 130.) The ALJ similarly discounted part of consultative psychologist Dr. Wanger's opinion because "[Plaintiff's] mental health treatment has been conservative other than medication." (*Id.*) The ALJ explained her RFC assessment by stating: "Despite persistent complaints of diffuse joint pain and fatigue due to psoriatic arthritis, fibromyalgia, and anemia, her medical treatment has consisted mostly of medication management." (*Id.* at PageID 130-31.) The ALJ further noted that despite the diagnosis of thoracic spine degenerative disease, "specific treatment for this has not been received since the alleged onset date." (*Id.*) Finally, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the extent of limitations

13

alleged was "not entirely consistent with the medical evidence and other evidence in the record" because, in part, "her medical treatment has been conservative, consisting mostly of medication management." (Decision, Doc. No. 8-2 at PageID 127.)

The ALJ's decision did not comply with the Social Security Administration's requirement that an ALJ consider *why* a claimant's treatment history is inconsistent with her complaints when evaluating symptom severity:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. *We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.* We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . *We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.*

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). An individual's inability to afford treatment is a possible reason an ALJ should consider when evaluating a lack of treatment. SSR 16-3p at *10.

14

Here, the ALJ did not comply with SSR 16-3p because she did not consider the possible reasons why Plaintiff failed to seek treatment consistent with the degree of her complaints. For example, the ALJ asked Plaintiff at the November 2021 hearing whether she was currently receiving mental health treatment. (AR, Doc. No. 8-2 at PageID 152.) Plaintiff responded that she was not receiving treatment because she could not "find anybody that [was in her] network" who was "close enough" for her to see. (*Id.*) The ALJ did not acknowledge this explanation in the decision.

Nor did the ALJ identify or discuss statements in the medical records that provide possible reasons why Plaintiff did not seek treatment consistent with the degree of her complaints. Plaintiff told her family physician in July 2017 that she had "not been able to find [a psychiatrist] in network with her insurance." (AR, Doc. No. 8-7 at PageID 813.) Plaintiff's hematologist referred her to Ohio Gastroenterology in early 2018 but noted in May 2018 that no appointments were available until October 2018. (*Id.* at PageID 1055.) Plaintiff also repeatedly told her providers that she was anxious about leaving her house and did not like to do so. (AR, Doc. No. 8-7 at PageID 830 & 1236.)

Although these statements could explain Plaintiff's limited treatment history, the ALJ did not acknowledge or discuss them. The ALJ also did not develop the record and ask Plaintiff why she did not seek treatment consistent with her complaints. The ALJ's failure to address Plaintiff's possible reasons for not seeking treatment consistent with her complaints, as required by the applicable Social Security rules and regulations, constitutes reversible error. *Deanna S. v. Comm'r of Soc. Sec.*, No. 1:22-cv-602, 2023 U.S. Dist. LEXIS 172825, at *12-13 (S.D. Ohio Sept. 27, 2023) (Bowman, M.J.).

15

**B.** **The ALJ Reversibly Erred When Evaluating The Medical Opinion Evidence.**

    **1.** **The ALJ is required to explain her analysis of the supportability and consistency of all medical opinions in the record.**

ALJs must analyze the persuasiveness of "*all* of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [his] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations

16

presented by a medical source are to support his or her medical opinion(s) . . . the more

persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the

second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the

evidence from other medical sources and nonmedical sources in the claim, the more

persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). In other

words, supportability addresses whether a medical professional has sufficient justification

for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861,

2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.). Consistency, by

contrast, requires the ALJ to compare the medical opinion at issue to "*other* medical and

nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL

2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to

consider the supportability and consistency of all medical opinions in the record, but also

to "explain *how* he or she considered them."[3] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-

00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20

C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No

"specific level of detail" is required, as "the appropriate level of articulation will

necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of

Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023)

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

(Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2. The ALJ reversibly erred by failing to evaluate the opinions of consultative psychologist Dr. Meyer.

As noted, ALJs must consider and evaluate *every* medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(c) (emphasis added). Several statements in the Functional Assessment section of Dr. Meyer's November 2017 report constitute

18

medical opinions. Therefore, the ALJ was required to evaluate them. But the ALJ merely summarized subjective complaints and mental status findings in Dr. Meyer's report. (Decision, Doc. No. 8-2 at PageID 127.) The ALJ did not summarize or discuss any of Dr. Meyer's opinions. (*Id.*) The ALJ therefore did not comply with the requirement to evaluate the persuasiveness of every medical opinion and to explain how she considered the supportability and consistency factors. This failure constitutes reversible error and provides another reason why the case should be remanded.

Defendant contends that the ALJ did not reversibly err because "[t]the ALJ did discuss Dr. Meyer's findings, which supported her [RFC]." (Mem. In. Opp, Doc. No. 13 at PageID 1518.). Defendant cites to several Sixth Circuit cases to argue that the ALJ's decision should be read as a whole to determine whether she "substantively considered the supportability and consistency factors" consistent with the regulations. (*Id.* at PageID 1519-20 (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006); *Chicora v. Comm'r of Soc. Sec.*, 852 F. App'x 968, 970 (6th Cir. 2021).) These cases are inapplicable because they applied the prior regulations for evaluating opinion evidence, which did not require ALJs to explain their consideration of the supportability and consistency factors. By contrast, the new regulation that applies here does impose such a requirement. *See* 20 C.F.R. § 404.1520c(b)(2).

### 3.     The ALJ's error was not harmless.

Defendant argues that the ALJ's failure to evaluate Dr. Meyer's opinion was harmless because the ALJ's RFC findings are consistent with the opinion: "[I]t appears

the ALJ incorporated or accounted for Dr. Meyer's limitations into the [RFC] by restricting her to a range of simple work with some social interacting limitations." (Mem. In. Opp., Doc. No. 13 at PageID 1519 (citation omitted).) This contention too, is not well-taken.

Courts generally excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends upon the nature of the regulation and the importance of its procedural safeguard. *Id*. For example, an ALJ's failure to comply with the prior treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion . . . or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

The Sixth Circuit has not addressed the circumstances in which an ALJ's failure to explain her consideration of the supportability and consistency factors can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, which applies to violations of the treating physician rule, should also apply to violations of Section 404.1520c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, Case No. 1:21-cv-1739, 2022 U.S. Dist. LEXIS 88910, *39 (N.D.

Ohio Apr. 27, 2022) (collecting cases). This Court agrees that the *Wilson* harmless error test should apply to violations of 20 C.F.R. § 404.1520c(b)(2).

The mandatory articulation requirement in Section 404.1520c(b)(2) is similar to the "good reasons" requirement of the prior treating physician rule. Under that rule, an ALJ who declines to give controlling weight to the opinion of a treating physician must articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996). The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 404.1520c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 404.1520c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. *Id*. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

21

The mandatory articulation requirement in Section 404.1520c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 404.1520c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 404.1520c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id*. The Commissioner's use of mandatory language (the ALJ "*will* explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 404.1520c(b)(2) will make it difficult for a court to determine whether the error

is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 U.S. Dist. LEXIS 130309, *14-15 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 404.1520c(b)(2).

For these reasons, this Court concludes that the *Wilson* harmless error test applies to violations of 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ's failure to explain her consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546. *Cf. Andrew M. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-906, 2022 U.S. Dist. LEXIS 40323, *17-18 (S.D. Ohio Mar. 8, 2022) (Bowman, M.J.) (failure to comply with the mandatory articulation requirement in Section 404.1520c(b)(2) was not harmless where evidence in the record could have supported the rejected medical opinions); *Miles v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, *12 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) (violation of the mandatory requirement in Section 404.1520c(b)(2) required reversal and "the Commissioner's *post hoc* rationalization of how [the] ALJ could have applied the factors … does not cure this deficiency").

Applying the *Wilson* test here, Defendant must show that the ALJ either adopted Dr. Meyer's opinion or made findings consistent with her opinion. The Court finds that

Defendant has not made this showing. The RFC limitations for simple tasks in a routine work environment that involve occasional social interactions could arguably account for Dr. Meyer's opinions regarding Plaintiff's chronic pain and social functioning. But the RFC limitations do not account for Dr. Meyer's opinions that Plaintiff's depression might lead to decreased attention and concentration skills, slowed work performance and poor frustration tolerance. Accordingly, the Court concludes that the ALJ's error in failing to evaluate Dr. Meyer's opinion cannot be excused as harmless. For this reason, too, the Court reverses and remands the ALJ's decision.

## VI.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the

24

record as necessary, particularly as to Plaintiff's symptom severity and the opinion of consultative psychologist Dr. Meyer, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. No. 10) is GRANTED;

2.  The Court REVERSES the Commissioner's non-disability determination;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case is terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge
